UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Abel Aaron Nelson,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Referee Elizabeth Clysdale, in her official and individual capacity; Judge Thomas A. Gilligan, in his official and individual capacity; State of Minnesota; Minnesota Judicial Branch; Minnesota Department of Human Services – Child Support Division; Sarah Derry (formerly Sarah Nelson); Henson & Efron, P.A; Lisa Spencer; Anne Haaland; Matthew Shore; Andrew Brower<br><br>　　　　　Defendants. | Court File No. 25-cv-01404 (LMP/DJF)<br><br><br>**STATE DEFENDANTS'<br>MEMORANDUM OF LAW<br>IN SUPPORT OF<br>MOTION TO DISMISS<br>AMENDED COMPLAINT** |

## INTRODUCTION

Plaintiff's lawsuit improperly seeks to relitigate his state law family dispute in federal court. This Court lacks jurisdiction to hear Plaintiff's claims against the State Defendants[1]. Plaintiff's claims all arise from his ongoing family court proceedings in the

---

[1] Collectively, the "State Defendants" are Ramsey County Family Court Referee Elizabeth Clysdale and Ramsey County District Court Judge Thomas A. Gilligan, in their official and individual capacities, the State of Minnesota, the Minnesota Judicial Branch, and the Minnesota Department of Human Services. Notably, Plaintiff incorrectly named the Minnesota Department of Human Services – Child Support Division as a defendant in this matter. First, there is no, nor does Plaintiff cite to any, authority that permits someone to sue a division or office of a Minnesota state agency. To the contrary, the Minnesota Department of Human Services – Child Support Division is not a legal entity subject to suit. *See Doe v. Mower Cnty. Health & Hum. Servs. Off. of Child Support*, No. 18-CV-3221 (WMW/KMM), 2019 WL 3824256, at *1 n.1 (D. Minn. Aug. 15, 2019). Second, as of July 2024, the Minnesota Department of Human Services no longer administers child support. Indeed, the child support division now operates within the Minnesota Department of Children, Youth, and Families. While these bases provide sufficient justification to

Ramsey County District Court. Accordingly, this Court's jurisdiction is precluded by *Younger v. Harris*, the domestic relations exception and the *Rooker-Feldman* doctrine.

In addition to these insurmountable jurisdictional barriers, Plaintiff's Amended Complaint fails to state a plausible claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Each State Defendant is also immune from Plaintiff's suit. Absolute judicial immunity bars Plaintiff's claims against Referee Clysdale and Judge Gilligan. Sovereign immunity bars Plaintiff's claims against the State of Minnesota, Minnesota Judicial Branch ("MJB"), and the Minnesota Department of Human Services ("MDHS"). Accordingly, this case should be dismissed.

## STATEMENT OF FACTS

Since 2021, Plaintiff has been involved in ongoing proceedings in Ramsey County District Court related to the dissolution of his marriage to Defendant Sarah Lynn Derry. *See In the Marriage of Sarah Lynn Nelson, n/k/a Sarah Lynn Derry, and Abel Aaron Nelson and Ramsey County, Intervenor*, 62-FA-21-428 (Ramsey County Dist. Court); *also* ECF Doc. 5, ¶¶ 1-9. On November 12, 2021, Plaintiff's dissolution case was transferred to Ramsey County Family Court Referee Elizabeth Clysdale. *See* MCRO Index #64. On November 13, 2023, following a three-day trial, Referee Clysdale issued a decree of

---

dismiss this party alone, because Plaintiff is proceeding *pro se*, the State Defendants will liberally construe the Amended Complaint as it regards the inclusion of the Minnesota Department of Human Services – Child Support Division. Therefore, for the purposes of this Motion to Dismiss, the State Defendants argue for the dismissal of the Minnesota Department of Children, Youth, and Families as the proper party intended to be served. Any further reference to the Minnesota Department of Human Services in this Memorandum necessarily includes the Minnesota Department of Children, Youth, and Families.

dissolution ("the Decree"), awarding marital assets and assigning parenting time. *See* ECF Doc, 5-1, pg. 2. The decree was signed by both Referee Clysdale and then Ramsey County Judge JaPaul Harris. *Id*. Plaintiff appealed aspects of this decree to the Minnesota Court of Appeals and also moved to vacate Referee Clysdale's past orders. *See In the Marriage of: Sarah Lynn Nelson, n/k/a Sarah Lynn Derry, v. Abel Aaron Nelson*, No. A24-1135, 2025 WL 1498063, (Minn. Ct. App. May 27, 2025).

With his appeal pending, Plaintiff made several motions in the district court to amend and reopen the Decree, which Referee Clysdale granted in part, issuing an amended order of findings and relief on March 16, 2024. *See* MCRO Index #239. That order was signed by both Referee Clysdale and Ramsey County Judge Nicole Starr. *Id*. The amended order required, among other things, Plaintiff to pay a money judgment to Defendant Derry. *Id*. On August 13, 2024, after Plaintiff refused to pay this money judgment, Referee Clysdale found him in default. *See* MCRO Index #260.

Following the default judgment order, Plaintiff, acting pro se, moved for an emergency temporary restraining order ("TRO"), requesting Referee Clysdale be enjoined from issuing any further rulings or taking further judicial actions in his dissolution case. *See* Gilligan November 13, 2024 Order.[2] First, Plaintiff moved for a TRO and emergency ex parte relief on September 20, September 25, and September 27, 2024 seeking to disqualify Referee Clysdale and vacate all of her prior orders in his case. Plaintiff

---

[2] Most of Plaintiff's state court motion papers are not publicly available via the Minnesota State Court Records system because they contain Referee Clysdale's personal address and other identifying information. Judge Gilligan's November 13, 2024, order summarizes the history of Plaintiff's state court motion practice. MCRO Index #377.

3

contended that Referee Clysdale was not a Minnesota resident[3] and therefore could not serve as a referee or judicial officer in his case. Plaintiff also requested a stay of proceedings pending resolution of his ongoing appeal. On October 1, 2024, in an order recommended by Referee Clysdale and signed by Ramsey County District Court Judge Jacob Kraus, Plaintiff's motions were denied. *Id.*

Next, on October 15, 2024, Plaintiff petitioned for a writ of mandamus from the Minnesota Court of Appeals seeking to remove Referee Clysdale from his case and vacate her past orders. Chief Judge Susan Segal denied Plaintiff's request. *See In re Abel Aaron Nelson*, Order, No. A24-1582 (Minn. Ct. App. October 15, 2024); ECF. Doc. 5-2, Ex. D. Then, on November 5, 2024, Plaintiff's dissolution case was reassigned to Defendant Ramsey County District Court Judge Thomas A. Gilligan. Plaintiff's request that Judge Gilligan reconsider his TRO request was denied. MCRO Index #377.

On February 25, 2025, Plaintiff again tried to remove and vacate Referee Clysdale's previous orders by filing a motion in his dissolution appellate case for "Judicial Notice and Declaration of Void Orders" based on Referee Clysdale's residence. That motion was denied. *Nelson* at *8. Plaintiff then filed a notice of appeal for Judge Gilligan's TRO order on May 20, 2025. MCRO Index # 517.

## PROCEDURAL HISTORY

On April 14, 2025, Plaintiff filed a complaint and emergency TRO request in federal court naming the State of Minnesota, Referee Clysdale and Judge Gilligan, among others,

---

[3] Referee Clysdale is not a resident of Minnesota. This fact is undisputed.

as defendants. *See* ECF Doc. 1. The original complaint sought to stop a state court hearing regarding a discovery dispute.[4] Almost a month later, Plaintiff filed an amended complaint adding the Minnesota Department of Human Services and the Minnesota Judicial Branch as defendants. ECF Doc. 5. Along with the amended complaint, Plaintiff filed a motion for expedited relief and a temporary restraining order against State Defendants. Plaintiff seeks monetary relief against State Defendants and declaratory relief against Referee Clysdale vacating her past orders in the dissolution case. State Defendants now move to dismiss Plaintiff's amended complaint with prejudice

## LEGAL STANDARD

A federal court must dismiss a claim if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), 12(h)(3). Under Rule 12, "the court merely needs to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) (cleaned up). "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) requires courts to determine whether a complaint plausibly establishes "that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing Fed. R. Civ. P. 8(a)(2)). In determining whether a complaint plausibly sets forth grounds for relief, the Court must accept all of Plaintiff's factual allegations as true and consider

---

[4] The issues detailed in Plaintiff's original complaint are now moot.

these allegations in the light most favorable to Plaintiff.. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Court need not, however, accept as true legal conclusions couched as factual allegations. *Id*.

## ARGUMENT

State Defendants respectfully request dismissal of the Amended Complaint in its entirety and with prejudice. Dismissal is proper because Plaintiff's claims are barred by the *Younger* abstention doctrine's domestic relations exception; the Court lacks jurisdiction under *Rooker-Feldman*; Referee Clysdale and Judge Gilligan are protected by the doctrine of absolute judicial immunity; the State of Minnesota, Minnesota Judicial Branch, and the Minnesota Department of Human Services are protected by sovereign immunity; and because the Amended Complaint fails to state a plausible claim upon which relief can be granted.

### I. THIS COURT LACKS JURISDICTION UNDER THE *YOUNGER* ABSTENTION DOCTRINE.

Plaintiff seeks this federal court's relief from ongoing state court marital dissolution proceedings. The *Younger* abstention doctrine's prevents this Court exercising jurisdiction over Plaintiff's Amended Complaint. The Court should accordingly dismiss all of Plaintiff's claims with prejudice.

#### A. The Court Lacks Jurisdiction Under the *Younger* Abstention Doctrine.

The *Younger* abstention doctrine directs federal courts to "abstain from exercising their jurisdiction if (1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to raise any relevant federal

6

questions." *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012) (citing *Younger v. Harris*, 401 U.S. 37 (1971)); *P.G. v. Ramsey Cnty.*, 141 F. Supp. 2d 1220, 1228 (D. Minn. 2001) (describing *Younger* abstention as mandatory). The doctrine is grounded in consideration of comity, and the notion that state courts are equally capable of safeguarding federal constitutional rights. *Carlson v. Cnty. of Ramsey*, Case No. 16-765 (SRN/BRT), 2016 WL 3352196, at *5 (D. Minn. June 15, 2016).

Every *Younger* factor is satisfied here, which compels this Court to abstain from exercising its jurisdiction over Plaintiff's claims against the State Defendants. *Tony Alamo*, 664 F.3d at 1248 (affirming dismissal of claims at issue in state court child custody proceeding ongoing at time of case filing). In addition, Plaintiff recently filed another notice of appeal in his state court case, meaning aspects of his state court case are still pending. *See* MCRO Index # 514.

Plaintiff's state court marital dissolution case is precisely the type that warrants federal court abstention: such proceedings involve orders "uniquely in furtherance of the state courts' ability to perform their judicial functions, such as the custody, contempt, and disclosure orders that are integral to the state court's ability to perform its judicial function in custody proceedings." *Carlson* at *6 (citations and internal quotation marks omitted). Here, Plaintiff asks this Court to award damages and vacate Referee Clysdale's previous orders—some of which are currently under review by the Minnesota Court of Appeals-- which would interfere with the state's ongoing proceedings.

Next, Plaintiff asks the Court to vacate several of Referee Clysdale's orders in his dissolution case. Several of these orders dealt with child support, parenting time, monetary

7

judgments, disclosure orders, and the disposition of marital assets. These issues implicate important state interests, namely the area of domestic relations. Accordingly, federal abstention is appropriate. *Mansell v. Mansell*, 490 U.S. 581, 587 (1989) ("[D]omestic relations are preeminently matters of state law."); *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern."); *Tony Alamo*, 664 F.3d at 1249 ("[T]here is no doubt that state-court proceedings regarding the welfare of children reflect an important state interest that is plainly within the scope of [*Younger*]."); *Liedel*, 891 F.2d at 1546 ("[U]nder *Younger* and *Sims* federal district courts may not interfere with ongoing child custody proceedings.").

Finally, Plaintiff does not claim that he is unable to assert any federal rights in his ongoing state court proceedings. "[A]bsent a showing by the plaintiff to the contrary, there is a presumption that state courts will provide an adequate opportunity to raise constitutional claims." *Colvin v. Plymouth Police Dept.*, Civ. No. 19-883 (DSD/BRT), 2019 WL 4933661, at *2 (D. Minn. Oct. 7, 2019). Indeed, Plaintiff raised identical arguments regarding Referee Clysdale's jurisdiction several times in state district court and twice in Minnesota appellate courts. But he does not claim that the state courts have refused to consider or are incapable of considering any federal constitutional claims. Rather, he is simply dissatisfied with his state court outcomes thus far. Here, to award Plaintiff the monetary and injunctive relief he seeks, this Court would be required to determine that the state court has taken an unconstitutional or wrongful action during its proceedings. *See Carlson*, 2016 WL 3352196, at *6 n.3.

Moreover, Plaintiff can and should raise any federal constitutional claims as a part of the ongoing state court proceedings. *Id.* at *6. ("Proper respect for the state court's ability to resolve federal questions during the ongoing child custody proceedings mandates that this Court stay its hand.") Because all of the factors are satisfied, *Younger* abstention compels this Court to dismiss all of Plaintiff's claims against the State Defendants.

## II. THE COURT LACKS JURISDICTION UNDER THE DOMESTIC RELATIONS EXCEPTION.

A separate basis to dismiss the Amended Complaint is that the Court also lacks subject matter jurisdiction under the domestic relations exception. The domestic relations exception "divests the federal courts of jurisdiction over any action for which the subject is a divorce, allowance of alimony, or child custody." *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994). Federal courts are deprived of jurisdiction when a federal suit is "inextricably intertwined with a state domestic proceeding." *Wallace v. Wallace*, 736 F.3d 764, 767 (8th Cir. 2013). A federal suit is inextricably intertwined with a state court divorce proceeding where the requested federal remedy overlaps with the remedy at issue in the state court proceeding such that the effect of the remedy in the federal suit is to "modify, nullify, or predetermine the domestic ruling of the state proceeding." *Id.*

Plaintiff's Amended Complaint is nothing more than a collateral attack on the rulings of state court district and appellate judges in his ongoing marital dissolution case. They are inextricably intertwined with his ongoing state court domestic proceeding. Moreover, if the Court were to grant Plaintiff's relief, it would necessarily have to vacate

previous orders that determined issues of custody and the distribution of marital assets. As a result, this Court lacks jurisdiction.

### III. THE COURT LACKS JURISDICTION UNDER *ROOKER-FELDMAN*.

Even if this Court determined Plaintiff's Amended Complaint does not constitute a domestic claim, his claims also fail because the Amended Complaint seeks to reverse or void several state court rulings. Such relief is jurisdictionally foreclosed under the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under this doctrine, federal courts lack subject-matter jurisdiction to hear challenges to the constitutionality of state-court decisions, including any issues that are "inextricably intertwined" with a prior state-court judgment. *Feldman*, 460 U.S. at 486; *Rooker*, 263 U.S. at 415-16; *see also, See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 n.1 (2005) ("district court could not entertain constitutional claims attacking a state-court judgment, even if the state court had not passed directly on those claims, when the constitutional attack was 'inextricably intertwined' with the state court's judgment"); *see also Christ's Household of Faith v. Ramsey Cnty.*, 618 F. Supp. 2d 1040, 1044 (D. Minn. 2009) ("This Court will not allow [plaintiff] to succeed in its attempt to perform an end run around the state court's decision."). A federal claim is "inextricably intertwined" with a prior state-court judgment when the relief sought would effectively reverse or void the state-court ruling. *Canal Capital Corp. v. Valley Price Pack, Inc.*, 169 F.3d 508, 512 (8th Cir. 1999) (citation omitted).

Additionally, application of *Rooker-Feldman* extends to claims not specifically included in the state court proceedings when such claims are inextricably intertwined with the state court's judgment. State appellate courts review appeals from state district court decisions, and federal review is available only in the United States Supreme Court. 28 U.S.C. § 1257; *Feldman*, 460 U.S. at 476, 482, 486.

*Rooker-Feldman* applies to: "[1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the [federal] district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. Plaintiff's claims meet each of these criteria. Plaintiff has extensively raised his arguments about Referee Clysdale in state court proceedings and his arguments have universally failed. As a result, granting Plaintiff the relief sought here requires this Court to determine that the state court's decisions are wrong and would void its rulings. Plaintiff's claims are thus inextricably intertwined with the state court proceedings, and the Court lacks jurisdiction.

## IV. PLAINTIFF'S CLAIMS ARE BARRED BY ABSOLUTE JUDICIAL IMMUNITY.

Absolute judicial immunity bars all of Plaintiff's claims against Referee Clysdale and Judge Gilligan. "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction[.]" *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967); *see also Linder v. Foster*, 295 N.W. 299, 300-301 (Minn. 1940) (recognizing that the doctrine of judicial immunity is well-established in Minnesota and federal law). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11

11

(1991). "The rationale for this broad application of immunity is to preserve judicial independence by allowing judges to act in their official capacity without fear of retaliatory civil suits." *Myers v. Price*, 463 N.W.2d 773, 775 (Minn. Ct. App. 1990); *see also Forrester v. White*, 484 U.S. 219, 225 (1988) ("Besides protecting the finality of judgments or discouraging inappropriate collateral attacks . . . judicial immunity also protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants."). "The desirability of such freedom of judicial action applies equally to court-appointed referees and receivers, and brings them within the cloak of judicial immunity." *Drexler v. Walters*, 290 F. Supp. 150, 154 (D. Minn. 1968) (emphasis added).

As an initial matter, the Amended Complaint is devoid of allegations regarding Judge Gilligan, other than to say that he denied one of Plaintiff's motions. ECF Doc. 5, ¶7. There is no allegation that Judge Gilligan acted in a non-judicial capacity or that he lacked jurisdiction to make rulings in Plaintiff's case. It is within the scope and duties of a district court judge to adopt, review, and affirm a referee's findings and orders. Minn. Stat. § 484.70, subd. 7(c). Plaintiff is challenging past actions taken by a judicial officer. These are precisely the kinds of actions that are protected by judicial immunity. *E.g.*, *Grazzini–Rucki*, 597 Fed. Appx. at 903. Accordingly, Judge Gilligan is entitled to judicial immunity because Plaintiff is seeking retrospective relief from past judicial rulings.

Plaintiff does contend that Referee Clysdale lacked jurisdiction to make rulings in his case, but he fundamentally misunderstands the role of a judicial referee. Judicial immunity is unavailable only when a judge acts in a "nonjudicial capacity" or "in the complete absence of all jurisdiction." *Albert v. Minnesota Ct. of Appeals, et al*,

No. 22-CV-2568 (NEB/DTS), 2022 WL 18141658, at *3 (D. Minn. Nov. 30, 2022) (citations omitted). Plaintiff argues that Referee Clysdale lacked jurisdiction in his dissolution case because she is not a resident of Ramsey County and the Minnesota Constitution provides that: "Each judge of the district court shall be a resident of that district at the time of his selection and during his continuance in office." (Article IV, section 4 of the Minnesota Constitution ). According to Plaintiff, state court referees are Minnesota judicial officers under Minn. Stat. § 351.02. But this law's plain language does not address court-appointed referees, and Plaintiff has not provided any legal authority requiring referees to be Minnesota residents.

A court-appointed referee can make findings and recommendations, but they do not become court orders until they are confirmed and ordered so by the district court. Minn. Stat. § 484.70, subd. 7(c) (2024). Under this statute, a referee's duties and powers allow them to: "(a) [h]ear and report all matters assigned by the chief judge. (b) [r]ecommend findings of fact, conclusions of law, temporary and interim orders, and final orders for judgment." *Id*.  And Plaintiff has not provided any recommendation or finding by Referee Clysdale that was not signed by a judge. Indeed, each of Referee Clysdale's actions taken in this case were authorized by Minnesota Statute. While Plaintiff asserts that Referee Clysdale acted without jurisdiction, the Court is not bound to accept his legal conclusion as a factual allegation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

Plaintiff does contend that his dissolution decree was signed by Judge JaPaul Harris without meaningful judicial review. ECF Doc. 5, ¶ 6. But once again Plaintiff provides no

13

authority dictating how or by what standard a judge must review a referee's recommended findings. Both Referee Clysdale and Judge Gilligan are absolutely immune from claims challenging the exercise of their judicial discretion, and Plaintiff's claims against them must be dismissed with prejudice.

### V. PLAINTIFF'S CLAIMS AGAINST THE STATE OF MINNESOTA, MDHS, MJB, AND OFFICIAL-CAPACITY CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY.

Plaintiff brings a due process claim under §1983 against the State of Minnesota, MDHS, and MJB. Sovereign immunity is an absolute bar to all of Plaintiff's claims. The Eleventh Amendment prevents citizens from bringing suit against their own states in federal court. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). The Eleventh Amendment also bars a federal court from deciding claims that a state has violated or is not complying with state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). And, the Eleventh Amendment applies whether plaintiff is seeking damages or injunctive relief. *See Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007).

Courts consistently apply Eleventh Amendment immunity to bar causes of action against states and state agencies, like the State of Minnesota and MDHS, in federal court. *See, e.g.*, *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968-69 (8th Cir. 2000) (barring Minnesota Human Rights Act claim against state university on sovereign immunity grounds); Likewise, state court systems, like MJB, are "protected by state immunity under the eleventh amendment." *Harris v. Mo. Court of Appeals*, 787 F.2d 427, 429 (8th

Cir.1986) (holding that state courts possess Eleventh Amendment immunity from § 1983 suit). And state officials sued in their official capacities, like Referee Clysdale and Judge Gilligan in their official capacity are not "persons" subject to suits for damages under Section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, Plaintiff's claims against the State, MJB, MDHS, and his official capacity claims against Referee Clysdale and Judge Gilligan, are barred by sovereign immunity.

All of Plaintiff's claims against the State are barred by the Eleventh Amendment. As an initial matter, Plaintiff failed to allege any facts regarding any actions taken by the State or MJB to support his claims. Plaintiff's only allegation against MDHS is that the agency relied on the state court's orders during his state court proceedings. Plaintiff's core claim is that Referee Clysdale violated his due process rights by issuing orders outside her jurisdiction in his marital dissolution case. But the relief Plaintiff seeks—money damages and injunctive relief against the State, MJB, and MDHS—is unconnected to this complaint. More importantly, it is precisely the type of relief barred by sovereign immunity.

## VI. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM.

Although the Court has ample bases to dismiss Plaintiff's claims against State Defendants, his Amended Complaint is deficiently pled and fails to state a claim under Federal Rule of Civil Procedure 12. Plaintiff's claims are conclusory and do not plausibly allege wrongful action by any of the State Defendants.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "At a minimum . . . a complaint must contain facts sufficient to state a claim as a matter of law and must not be

15

merely conclusory in its allegations." *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998).

Moreover, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, a plaintiff must plead facts sufficient to "raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. The Amended Complaint is devoid of any reference to the State or MJB and Plaintiff's theory of liability for those defendants is illegible. Additionally, Plaintiff pleads with conclusory statements regarding MDHS, alleging that MDHS relied on Referee Clysdale's orders in its decision-making process during the dissolution case. Those allegations do not suffice under Rule 12 and there is no legal support for the proposition that a state agency can be held liable for relying on a referee's reports and recommendations. *See Iqbal*, 556 U.S. at 678. Additionally, the Amended Complaint's only reference to Judge Gilligan is that he ruled against Plaintiff in state court, combined with a conclusory statement that those rulings were wrong. As a matter of law, these allegations are sufficient to state a claim upon which relief can be granted. *Wiles* at 870. Because Plaintiff has failed to sufficiently plead any of his claims, they should be dismissed with prejudice. *See Cole v. Does*, 571 F. Supp. 3d 1033, 1046 (D. Minn. 2021) (dismissing claims where a plaintiff fails to allege the essential elements of the claim).

## CONCLUSION

Because Plaintiff's state court marital dissolution proceeding is ongoing, this Court should abstain from exercising its jurisdiction under *Younger*, the domestic relations

exception, or *Rooker-Feldman*. Even if these insurmountable barriers were not enough to warrant dismissal, the State Defendants are immune from this lawsuit under doctrines of absolute judicial immunity and sovereign immunity. Finally, the Amended Complaint fails to state a plausible claim against any State Defendant. Under any set of pled facts, Plaintiff's Amended Complaint does not belong in federal court. State Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice.

Dated: June 2, 2025

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

s/ **Matthew A. McGuire**
MATTHEW A. MCGUIRE (0402754)
NICK PLADSON (0388148)
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 300-7482 (Voice)
(651) 282-5832 (Fax)
Matthew.McGuire@ag.state.mn.us
Nick.Pladson@ag.state.mn.us

ATTORNEYS FOR STATE DEFENDANTS

|#6085743-v1